UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA L. PANFIL,                                    16-CV-947-MJR
                                                   DECISION AND ORDER
            Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

            Defendant.
_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13).

Plaintiff Lisa Panfil brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Panfil's motion (Dkt. No. 8) is denied and the Commissioner's motion (Dkt. No. 10) is granted.

## **BACKGROUND**

In late 2012, Panfil filed applications for DIB and SSI alleging disability since November 30, 2011 due to anxiety, a pinched nerve in her elbow, bipolar disorder, attention deficit disorder, trouble sleeping, and "stress headaches." (*See* Tr. 63, 153-62).[2] Born in 1981, Panfil was thirty-one years old at the time of her applications. (Tr.

---
[1] The Clerk of Court is directed to amend the caption accordingly.
[2] References to "Tr." are to the administrative record in this case.

153). Panfil's applications were denied on April 5, 2013 (Tr. 63-84, 89-103) after which she requested a hearing before an Administrative Law Judge (Tr. 104-05). On July 14, 2014, Panfil appeared with counsel before Administrative Law Judge William M. Weir (the "ALJ") for a hearing. (Tr. 29-62). On April 22, 2015, the ALJ issued his decision denying Panfil's DIB and SSI claims. (Tr. 9-28). Panfil requested review by the Appeals Council (Tr. 6-8), but on September 28, 2016, the Appeals Council denied Panfil's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-3). This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II. *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in

Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1)*.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Panfil has not engaged in substantial gainful activity since November 30, 2011, her alleged onset date. (Tr. 14). At step two, the ALJ concluded that Panfil has the following severe impairments: "attention deficit hyperactivity disorder (ADHD); a generalized anxiety disorder; bipolar disorder; and migraine headaches." (Tr. 15). At step three, the ALJ found that Panfil does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 16). Before proceeding to step four, the ALJ assessed Panfil's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but cannot perform complex tasks, that is, tasks that risk injury to property or person and tasks that involve multiple simultaneous objectives or goals.

(Tr. 18). Proceeding to step four, the ALJ found that Panfil does not have any past relevant work. (Tr. 22). At the fifth step, the ALJ considered Panfil's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that she can perform jobs that exist in significant numbers in the national economy, such as Warehouse Worker and Commercial Laundry Worker II. (Tr. 23). Accordingly, the ALJ found that Panfil can successfully adjust to other work and, therefore, that she has not

been under a disability within the meaning of the Act from her alleged onset date of November 30, 2011 through the date of the ALJ's decision. (Tr. 23-24).

IV. *Panfil's Challenges*

Panfil challenges the Commissioner's disability decision on two grounds: first, that the ALJ's RFC assessment is not supported by substantial evidence, and second, that the ALJ failed to consider certain impairments in assessing her severe impairments at step two of the five-step sequential evaluation process. (*See* Dkt. No. 8 (Panfil's Memo. of Law)). The Court will address each argument in turn.

A. *RFC*

Panfil argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ purportedly reached that assessment by relying on his own lay interpretation of her brain MRI, the results of which the ALJ deemed "normal." Panfil argues that the ALJ should have instead requested a medical opinion regarding the MRI results to determine whether the results support her complaints of disabling migraine pain.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Williams v. Berryhill*, No. 16-CV-283-FPG, 2017 WL 1370995, at *3 (W.D.N.Y. Apr. 17, 2017) (alteration in original) (quoting *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)). Here, contrary to Panfil's argument, the ALJ did not assess her RFC on the basis of bare medical findings — rather, the ALJ considered all of the evidence in the record, including the medical opinion evidence, to conclude that Panfil retains the RFC "to perform a full range of work at all exertional levels but cannot perform complex tasks."

(Tr. 18-22). In particular, the ALJ noted that Panfil visited the Dent Neurologic Institute in August 2011 for evaluation of headaches that began approximately six months before the appointment. (Tr. 21 *referring to* Tr. 333-36). A brain MRI taken later that month was described by the reviewing physicians as a "[n]ormal MRI scan of the head without contrast with incidental finding of the following: (1) Pineal cyst[,] (2) Straightening of the normal cervical lordosis, which could indicate the presence of cervical paraspinal muscle spasm[,] [and] (3) Minimal nasal septum deviation from left to right." (Tr. 293). Thus, in concluding that the MRI results were normal, the ALJ was not offering his own lay interpretation of the MRI — to the contrary, he was directly quoting the physicians who had reviewed the MRI results. In addition to the MRI results, the ALJ gave "significant weight" to the medical opinion of Dr. Donna Miller, a consultative physician who examined Panfil in May 2013. (Tr. 21). Relying on what even Dr. Miller called normal MRI results, and having performed her own physical examination of Panfil, Dr. Miller opined that Panfil has no significant physical limitations (Tr. 413-16), a finding which fully supports the ALJ's conclusion that Panfil can perform a full range of work at all exertional levels. The ALJ also appropriately considered the treatment Panfil received for her migraines, such as nerve block treatment and Botox therapy (*see* Tr. 290-341, 438-47), and how this treatment helped alleviate her migraine pain (Tr. 21-22). Indeed, Panfil testified at the ALJ hearing that notwithstanding a few recent migraines, her migraines have been in remission for eight months. (Tr. 22 *referring to* Tr. 50-51). The Court finds that the foregoing evidence, including in particular Dr. Miller's opinion, constitutes substantial evidence in support of the ALJ's RFC assessment. *See, e.g., Pellam v. Astrue*, 508 F. App'x 87, 90-91 (2d Cir. 2013) (summary order) (concluding that medical opinion from a

consultative examiner, along with treatment notes from plaintiff's doctors, constituted substantial evidence in support of the ALJ's RFC assessment). Consequently, Panfil's first objection to the Commissioner's disability determination is without merit.

    B. *Severe Impairments*

Panfil also argues that the ALJ failed to consider certain impairments — namely, occipital neuralgia, myofascial pain, cervicalgia, and personality disorder — in assessing her severe impairments at step two of the five-step sequential evaluation process.

The claimant must show at step two that she has an impairment or combination of impairments that is "severe." 20 C.F.R. §§404.1520(c), 416.920(c). So long as the ALJ finds at least one severe impairment at the second step and goes on to consider all of the claimant's other, non-severe impairments at the remaining steps, the ALJ's failure to find additional severe impairments at the second step is harmless error. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order).

Here, the ALJ found four of Panfil's impairments — ADHD, generalized anxiety disorder, bipolar disorder, and migraine headaches — to be severe impairments at step two. (Tr. 15). To the extent the ALJ erred in not including occipital neuralgia, myofascial pain, cervicalgia, and personality disorder in his list of severe impairments, the error was harmless because the ALJ proceeded beyond step two and considered these impairments at the remaining steps. (*See* Tr. 22 (citing May 13, 2013, June 13, 2013, and June 20, 2013 Dent Neurologic Institute records that assess occipital neuralgia); Tr. 21 (citing September 17, 2012 and October 15, 2012 Dent Neurologic Institute records that assess myofascial pain and cervicalgia); Tr. 20-21 (citing August 21, 2013, October 18, 2013, and November 18, 2013 Springville Primary Care Center records that assess

personality disorder)). Accordingly, Panfil's second objection to the Commissioner's disability determination is likewise without merit.

## **CONCLUSION**

For the foregoing reasons, Panfil's motion for judgment on the pleadings (Dkt. No. 8) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: September 25, 2018
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge